**Joan E. DAVIS, Gerald Davis, and Rosalie Hansen, Plaintiffs and Appellants,**

v.

**STATE of Utah, Defendant and Appellee.**

No. 880282.

Supreme Court of Utah.

June 17, 1991.

---

David E. Yocom, Rena Barbiero, Salt Lake City, for defendant and appellee.

**STEWART, Justice:**

This is an appeal from an order forfeiting Joan Davis's 1987 Dodge van pursuant to Utah Code Ann. § 58–37–13 (Supp. 1987).[1] On August 4, 1987, Joan Davis drove her Dodge van to a location where a controlled substance, marijuana, was purchased. Passengers in the van included her son and an undercover narcotics officer, Steve Olsen. Upon arrival at the location, Davis's son left the van and purchased a quarter ounce of marijuana. After the purchase, the marijuana was divided up inside the van. Over five months later, Davis was arrested by Salt Lake City police officers, and the van was seized pursuant to § 58–37–13.

Davis filed a petition for the release of her van with the district court, and a trial was held April 8, 1988, to determine the validity of the State's claim to the vehicle. At trial, Davis contended that the van belonged to her husband, that her sister held a bona fide security interest in it, and that the seizure of the van was without a warrant and therefore unlawful. The State disputed these claims and argued that § 58–37–13 required a perfected security interest. The district court ruled that the statute did not require perfection, but that a bona fide security interest did not exist in the van. It also ruled that the van belonged to Davis, not her husband. Whether the van was lawfully seized without a warrant was not addressed by the court. The trial court ordered the van forfeited.

On appeal, Davis argues that (1) § 58–37–13, as applied in this case, is unconstitutional under the eighth amendment to the United States Constitution and article I, section 9 of the Utah Constitution; (2)

Earl S. Spafford, I. Charles Spafford, Salt Lake City, for plaintiffs and appellants.

1. The petition for release of the van was filed and the case was prosecuted in the trial court by Davis, her husband Gerald Davis, and her sister, Rosalie Hansen. Mr. Davis and Ms. Hansen each claimed an interest in the van. Because the parties were represented by the same attorney on appeal, their arguments are identical, and we will refer to the appellants as "Davis."

§ 58–37–13 does not permit a warrantless forfeiture under the circumstances of this case; (3) a bona fide security interest existed which barred a forfeiture; (4) statements made by Davis while in custody and before a *Miranda* warning was given are not admissible in a civil forfeiture proceeding; and (5) the warrantless seizure of the van invalidated the forfeiture proceedings.

We hold that there is substantial evidence supporting the trial judge's finding that there was no security interest in the van. The van's certificate of title indicated ownership in Joan Davis's name only and also indicated an absence of any lienholders. Furthermore, the trial judge found Davis's testimony to the contrary lacking in credibility. We therefore find no basis for disturbing the trial judge's finding on this issue. Because we reverse the judgment of forfeiture, we forego addressing a number of other issues that have been raised but do not pertain to our ruling. We note only that the State contends most of the issues were waived and that Davis contends otherwise.

Davis's arguments concerning the warrantless seizure and construction of § 58–37–13 were raised in the petition for release, which asserted that the seizure was unlawful because of the lack of a warrant and that her involvement in the drug transaction was not the type of conduct contemplated by § 58–37–13. We address these issues in reverse order.

## I. CONSTRUCTION OF SECTION 58–37–13

Davis argues that forfeiture is not authorized in this case because § 58–37–13 should not be interpreted to cover personal possession or consumption of a controlled substance within one's own vehicle. Utah Code Ann. § 58–37–13 (Supp.1987) provides:

(1) The following are subject to forfeiture, and no property right exists in them:

. . . .

(e) all conveyances including aircraft, vehicles, or vessels used or intended for use, to transport, or in any manner facilitate the transportation, sale, receipt, *simple possession*, or concealment of property [controlled substances] described in Subsections (1)(a) or (1)(b)

. . . .

(Emphasis added.)

Davis relies on *State v. One Porsche 2–Door*, 526 P.2d 917 (Utah 1974), for the proposition "that the primary and sole purpose of the statute and the intent of the legislature were directed exclusively toward the *transportation* of a controlled substance for distribution according to erstwhile law merchant principles, and not for personal possession and consumption." 526 P.2d at 918–19 (emphasis in original). *One Porsche* was reconsidered and somewhat limited in *State v. One 1983 Pontiac*, 717 P.2d 1338, 1340 (Utah 1986), in which we stated:

[T]he major thrust of the statute is to strike at those involved in the trafficking of drugs, rather than at the individual whose possession is solely for his own consumption. However, we do not read section 58–37–13 to require a showing of a profit motive on the part of the person involved in the transportation and distribution of drugs; to the extent *One Porsche* is contrary it is overruled.

The statute in effect when *One Porsche* and *One Pontiac* were decided was a version of § 58–37–13 which provided that "conveyances" used "in any manner [to] facilitate the transportation, sale, receipt, possession, or concealment" of a controlled substance could be forfeited. Utah Code Ann. § 58–37–13(1)(e) (1986).

Effective July 1, 1987, the statute was amended to allow forfeiture in cases of "simple possession." The change indicated a legislative intent to make clear that the term "possession" should be given its plain meaning to include possession for consumption. Section 58–37–2(27) (Supp.1987) defines the word "possession":

"Possession" or "use" means the joint or individual ownership, control, occupancy, holding, retaining, belonging, maintaining, obtaining, or the application, inhalation, swallowing, injection, or consumption, *as distinguished from distribu-*

*tion,* of controlled substances and includes individual, joint, or group possession or use of controlled substances. For a person to be a possessor or user of a controlled substance, *it is not required that he be shown to have individually possessed,* used, or controlled the substance, but it is *sufficient if it is shown that he jointly participated* with one or more persons in the use, possession, or control of any substances with knowledge that the activity was occurring.

(Emphasis added.)

It is undisputed that marijuana was in the possession of the occupants of the van, and the trial court found "that [Davis] knew and participated in the use of the vehicle in question for the illegal purpose of facilitating a sale of controlled substances." Although a forfeiture may be harsh in a case such as this, that is apparently what the Legislature intended.

## II. WARRANTLESS SEIZURE

■ Davis contends that the warrantless seizure of the van invalidated the forfeiture proceeding. Davis raised the issue at trial, but the trial judge did not rule on it. Section 58–37–13(2) (Supp.1987) sets forth the general rule that seizure of property subject to forfeiture must be pursuant to a warrant (i.e., process), subject, however, to four exceptions. That statute provides:

> Property subject to forfeiture under this act may be seized by any peace officer of this state upon process issued by any court having jurisdiction over the property. However, seizure without process may be made when:
>
> (a) the seizure is incident to an arrest or search under a search warrant or an inspection under an administrative inspection warrant;
>
> (b) the property subject to seizure has been the subject of a prior judgment in favor of the state in a criminal injunction or forfeiture proceeding under this act;
>
> (c) the peace officer has probable cause to believe that the property is directly or indirectly dangerous to health or safety; or

> (d) the peace officer has probable cause to believe that the property has been used or intended to be used in violation of this act.

The State has argued that it had probable cause to believe that the van had been used in violation of the Controlled Substances Act and that the seizure was therefore authorized by subparagraph (2)(d) of § 58–37–13, even though the State had no warrant.

We disagree. Subparagraph (2)(d) must be read in the context of the entire Controlled Substances Act to ascertain its proper meaning. The first paragraph in subsection (2) states the general rule that judicial process or a warrant is required to seize property for a forfeiture.

The subparagraphs in subsection (2) provide four explicit exceptions for when a warrantless seizure may be made. All the exceptions other than subparagraph (2)(d) involve situations in which some kind of process has already issued or exigent circumstances require an immediate seizure. Seizures under subparagraph (2)(a) require either a search warrant or an administrative inspection warrant, both of which are directed at the property to be seized. Noticeably absent is the specification that a seizure may be made pursuant to an arrest warrant. The phrase "seizure incident to an arrest" in subparagraph (2)(a) does not mention an arrest warrant. That phrase invokes a body of law which requires that the arrest of a person and a coincidental search and seizure must be pursuant to exigent circumstances. Thus, the exigency necessary to justify the arrest without a warrant must also exist for the "seizure incident to arrest."

■ The other exceptions to the requirement of process in subsection (2) recognize the necessity of either judicial process or some exception to the requirement of a warrant or other process. Under subparagraph (2)(b), the property seized must have been the subject of a judgment. Under (2)(c), the seizing officer must have probable cause to believe the seized property is dangerous to health or safety. Implicit in all the exceptions to the requirement of a warrant is the principle that the seizure must be pursuant to some kind of process

directed to the property (i.e., not just an arrest warrant) or required by exigent circumstances. Thus, § 58–37–13(2)(d), construed in the light of its context, requires exigent circumstances for the seizure.[2]

This conclusion is supported by case law from federal courts which have interpreted a similar provision in the federal Drug Abuse Prevention and Control Act.[3] *United States v. Spetz*, 721 F.2d 1457, 1470 (9th Cir.1983), interpreted 21 U.S.C. § 881(b)(4) to require exigent circumstances in addition to probable cause for a seizure to be made without a warrant. *United States v. Pappas*, 613 F.2d 324, 327 (1st Cir.1979), also dealt with a "warrantless seizure when the events providing the probable cause [were] remote in time from the actual seizure of the property and no exigent circumstances necessitate[d] prompt action." The court declined to rely on a "literal reading of the (b)(4) 'probable cause' exception" because to do so "would vitiate the section's warrant requirement." *Id.* at 328. The court stated that it

> would hesitate to construe the general provision as authorizing issuance of a warrant on less than a showing of probable cause, since this would conflict with the Fourth Amendment's proscription that "no Warrants shall issue, *but upon probable cause.*" Thus we are unable to conceive of a class of cases in which the process requirement would be satisfied,

yet the (b)(4) exception, read literally, would not at the same time apply; i.e., every case requiring process would also qualify for the exception to the requirement.

*Id.* (Emphasis in original.)

*Pappas* was criticized in *United States v. Bush*, 647 F.2d 357 (3d Cir.1981), which stated that the probable cause exception to the general process requirement in the federal statute did not create an inconsistency because the process that was required was issued under the Supplemental Rules for Certain Admiralty and Maritime Claims. The court stated that under the rules of admiralty, a seizure warrant could be issued without a showing of probable cause. *See id.* at 368. Therefore, the probable cause exception to the general warrant requirement was not inconsistent with the requirement of process because the exception required a higher standard (probable cause) for a warrantless seizure.[4]

■ Chief Justice Hall's dissenting opinion neglects that important point in relying on *Bush* and other cases that have construed the federal statute not to require a warrant. The Utah statute is significantly different from the federal statute because process is not issued pursuant to admiralty rules under the Utah statute, as is the case

---

**2.** A comparison with § 58–37–10(3)(d) is also helpful on this point. That statute defines the circumstances under which a seizure made pursuant to an administrative inspection may be made without a warrant. The circumstances include consent by the owner, imminent danger to health or safety, mobility of the conveyance making it impracticable to obtain a warrant, "any other exceptional or emergency circumstance where time or opportunity to apply for a warrant is lacking," and situations when a warrant is not constitutionally required.

**3.** The federal statute reads in part:
> (b) Any property subject to forfeiture to the United States under this subchapter may be seized by the Attorney General upon process issued pursuant to the Supplemental Rules for Certain Admiralty and Maritime Claims by any district court of the United States having jurisdiction over the property, except that seizure without such process may be made when—
>
> . . . .
> (4) the Attorney General has probable cause to believe that the property has been used or

is intended to be used in violation of this subchapter.
21 U.S.C. § 881(b) (1976).

**4.** *See also United States v. Valdes*, 876 F.2d 1554, 1557–58 n. 8 (11th Cir.1989), in which the court reached the same result by concluding that the general rule and the exception were simply alternative forfeiture provisions allowing the Attorney General to proceed under either admiralty or custom laws. In *United States v. Kemp*, 690 F.2d 397 (4th Cir.1982), the court reached the same result for yet another reason. In *Kemp*, the court allowed a warrantless seizure even though "the probable cause ... arose two years before the seizure." *Id.* at 403 (Ervin, Circuit Judge, dissenting). The majority reached this result on the theory that under federal law, "property is forfeited the instant it is used in violation of the drug laws." *Id.* at 401. In other words, the government needs no warrant to take control of its own property. Basically, five different circuits have applied five different theories to resolve this issue.

under the federal statute. Process under the Utah statute may only be issued upon a showing of probable cause.[5] Thus, § 58–37–13(2) would be internally inconsistent in establishing a general rule that a warrant based on probable cause is necessary for a seizure of property, while at the same time allowing a seizure based on probable cause without the necessity of either a warrant or exigent circumstances. To read § 58–37–13(2)(d) in that fashion, as the dissent does, is to allow the exception to swallow the rule. Since that difficulty does not arise under the federal statute as interpreted by *Bush* and the other cases cited in the dissenting opinion, those cases are irrelevant to our construction of § 58–37–13(2).

In sum, a fair reading of the probable cause exception in subparagraph (2)(d) is that probable cause must be accompanied by exigent circumstances for a warrantless seizure to be permissible. This construction is consistent with the fourth amendment and the context of the statute itself.

In this case, the seizure of the van took place more than five months after the drug transaction. No exigent circumstances existed. The seizing officers had ample time to obtain a seizure warrant pursuant to § 58–37–13(9), as evidenced by the fact that they actually did obtain an arrest warrant. Because the seizure of Davis's van did not comply with the requirements of § 58–37–13(2), the seizure was invalid.

■ We now turn to the effect that the invalid seizure had on the forfeiture proceeding. *Utah Liquor Control Commission v. Wooras*, 97 Utah 351, 364, 93 P.2d 455, 461 (1939), held that "before a court can lawfully determine any rights it must not only be a court empowered by law to determine such rights, but it must have acquired jurisdiction or control over the

subject of the particular action." In forfeiture actions, "where the proceeding is essentially against the property as such, the res itself must be brought before the court by and through such process as the law has decreed to place it within the power and control of the court.... And where there is no jurisdiction acquired the judgment is void." 97 Utah at 364–65, 93 P.2d at 461–62 (citations omitted). The Court held that because the seizure was illegal, the trial court did not have jurisdiction to forfeit the property. 97 Utah at 366, 93 P.2d at 462; *see also Utah Liquor Control Comm'n v. Vatsis*, 112 Utah 282, 186 P.2d 975 (1947). *Wooras* controls this case; the district court had no jurisdiction to declare a forfeiture of the van.

Although the rule in *Wooras* has not been followed in all jurisdictions, it is a rule which is finding increasing support, especially in jurisdictions that provide for seizure by statute. "Where the statute authorizing forfeiture expressly requires certain procedures to be followed in seizing the property to be forfeited, it has usually been held that compliance with such requirements is essential to enforcement." Annotation, *Lawfulness of Seizure of Property Used in Violation of Law as Prerequisite to Forfeiture Action or Proceeding*, 8 A.L.R.3d 473, 475 (1966). *See also* 36 Am.Jur.2d *Forfeitures and Penalties* § 30, at 631 (1968). For example, in *State v. $11,346.00 In U.S. Currency*, 777 P.2d 65, 68 (Wyo.1989), the court held that the state's right to forfeiture was subject to the requirements of a statute similar to the Utah statute, and because the state had not met the statutory requirements, forfeiture was not allowed. *In re 1976 Porsche Automobile*, 687 P.2d 946, 949 (Ariz.Ct. App.1984), also construed a forfeiture statute similar to the Utah statute and held

---

5. Although Utah Code Ann. § 58–37–13(9) does not specifically require probable cause before a warrant for seizure can be issued, that is logically the intent of the provision. Granting a warrant to seize property upon less than a showing of probable cause raises constitutional concerns under the fourth amendment of the United States Constitution and article I, section 14 of the Utah Constitution, which prohibit unreasonable searches and seizures. In *Bush*, the Third

Circuit had concerns about the constitutionality of a seizure warrant issued pursuant to admiralty rules upon less than probable cause but did not address the issue because it was not raised under the facts of the case. *See* 647 F.2d 357, 368 n. 14. We decline to call the constitutionality of the Utah seizure provision into question by interpreting it as requiring less than probable cause for the issuance of a warrant.

that the Arizona statute required a lawful seizure as a predicate to forfeiture. Other cases disallowing forfeitures because of illegal seizures are found in Annotation, *Lawfulness of Seizure of Property Used in Violation of Law as Prerequisite to Forfeiture Action or Proceeding,* 8 A.L.R.3d 473, 482–84 (1966 & Supp.1990).

The opposite result was reached in *Dodge v. United States,* 272 U.S. 530, 532, 47 S.Ct. 191, 192, 71 L.Ed. 392 (1926), in which Justice Holmes, in a somewhat circular argument, wrote that the owner of forfeited property "suffers nothing that he would not have suffered if the seizure had been authorized." Of course, the same could also be said about the exclusion of illegally seized evidence, an analysis which has not been followed. In any event, the seizure in *Dodge* was illegal because it was made by one without authority. The validity of the seizure was upheld on the theory that the seizure was subsequently adopted by the government. Many of the cases upholding illegal seizures have been decided on this ground.

> This doctrine is not applicable, however, where the objection to the seizure is not based on the premise that it was wrongful merely because made by one upon whom the government had not conferred authority to seize at the place where the seizure was made, but is premised upon the valid ground that the government itself lacks the power to seize because of a limitation upon its own authority.

36 Am.Jur.2d § 31, at 632. One other basis upon which courts have upheld forfeitures subsequent to illegal seizure is the distinction between "derivative" and "per se contraband." No property rights exist in per se contraband, the very possession of which is illegal. *See, e.g., One 1958 Plymouth Sedan v. Pennsylvania,* 380 U.S. 693, 699, 85 S.Ct. 1246, 1250, 14 L.Ed.2d 170 (1965).

In this case, the van was illegally seized because of the lack of a warrant. The basis for forfeiture derived from the connection of the van to the drugs, not because possession of the van was in and of itself illegal. Because the van was seized in violation of § 58–37–13(2), the van was not properly before the trial court and the court had no jurisdiction to order a forfeiture.

The judgment of the trial court is therefore reversed.

DURHAM and ZIMMERMAN, JJ., concur.

HALL, Chief Justice (dissenting):

I do not join the court in invalidating the forfeiture of the van because I do not agree that the warrantless seizure deprived the trial court of jurisdiction.

Utah Code Ann. § 58–37–13(2) (Supp. 1987) provides in pertinent part:

> (2) Property subject to forfeiture under this act may be seized by any peace officer of this state upon process issued by any court having jurisdiction over the property. However, seizure without process may be made when:
>
> (a) the seizure is incident to an arrest or search under a search warrant or an inspection under an administrative inspection warrant;
>
> . . .;
>
> (d) the peace officer has probable cause to believe that the property has been used or intended to be used in violation of this act.

The language of the statute and of its federal counterpart[1] is plain and unequivocal. It authorizes the seizure of property that is subject to forfeiture when the seizure is incident to arrest and also when there is probable cause to believe that the

**1.** See 21 U.S.C. § 881(b) (1976), which reads in pertinent part:

> (b) Any property subject to forfeiture to the United States under this subchapter may be seized by the Attorney General upon process issued pursuant to the Supplemental Rules for Certain Admiralty and Maritime Claims by any district court of the United States having jurisdiction over the property, except that seizure without such process may be made when—
>
> . . . . .
>
> (4) the Attorney General has probable cause to believe that the property has been used or is intended to be used in violation of this subchapter.

property has been used or is intended to be used in violation of the Act.

The facts of this case clearly fall within the statutory exceptions to the need for process to effect seizure. The seizure was made incident to the arrest of the owner of the van. Also, beyond a doubt, probable cause existed for the seizure by reason of the fact that an undercover officer had previously witnessed the van being used to facilitate the purchase and transportation of marijuana in violation of the Act.

Not having heretofore interpreted the Utah statute, it is instructive to look to the interpretation given its substantially similar federal counterpart. However, the courts that have refused to read the statute literally and instead have read an exigent circumstances requirement into it constitute a distinct minority.[2]

In *United States v. Pappas*, the court reasoned that a literal reading of the probable cause exception would, in effect, swallow up the general rule that property subject to forfeiture shall be seized "upon process issued." The court took the view that "to adhere to the literal language of the (b)(4) exception ... would render essentially meaningless the basic provision it purports to qualify."[3] However, in *United States v. Bush*,[4] the court declined to follow *Pappas* and instead gave the statute a "more straightforward interpretation."[5] The court reasoned that the explicit nature of the statute, which provides that " 'seizure without such process may be made when ... the Attorney General has proba-

ble cause to believe that the property has been used or is intended to be used in violation of this subchapter,' "[6] conveyed its plain meaning. The court further reasoned that " 'we must be mindful that the language of the statute controls when sufficiently clear in its context' "[7] and that " '[i]n the absence of a conflict between reasonably plain meaning and legislative history, the words of the statute must prevail.' "[8]

The court in *Bush* found no conflict between the plain meaning of the statute and its legislative history, the purpose of the statute being to "strengthen existing law enforcement authority in the field of drug abuse"[9] and the clear intention being "to liberalize, not restrict, the existing authority of law enforcement officers to seize property used in contravention of the drug control laws. Thus, to read an exigent circumstances requirement into the statute would be consistent with neither the plain language nor the legislative history of the Act."[10] Numerous other courts have reached the same result.[11]

The *Bush* court further concluded that the warrantless seizure was consistent with the requirements of the fourth amendment. In so doing, the court observed that a majority of the courts of appeals that have considered the issue, including the Third Circuit,[12] have held that a warrantless seizure of forfeit property is constitutional, notwithstanding the absence of exigent cir-

---

2. See *United States v. Spetz*, 721 F.2d 1457, 1469 (9th Cir.1983) (following *United States v. Pappas*, 613 F.2d 324, 329–30 (1st Cir.1979)).

3. *Pappas*, 613 F.2d at 329.

4. 647 F.2d 357 (3d Cir.1981).

5. *Id.* at 367.

6. *Id.* at 368 (quoting *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 201, 96 S.Ct. 1375, 1385, 47 L.Ed.2d 668 (1976)).

7. *Id.* (quoting *Ernst & Ernst v. Hochfelder*, 425 U.S. at 201, 96 S.Ct. at 1385).

8. *Id.* (quoting *Aaron v. Securities & Exch. Comm'n*, 446 U.S. 680, 700, 100 S.Ct. 1945, 1957, 64 L.Ed.2d 611 (1980)).

9. *Id.* (quoting H.R.Rep. No. 1444, 91st Cong.2d Sess. 1 (1970)).

10. *Id.*

11. *United States v. One 1978 Mercedes Benz*, 711 F.2d 1297, 1302 (5th Cir.1983); *United States v. Kemp*, 690 F.2d 397, 401–02 (4th Cir.1982); *United States v. One 1977 Lincoln Mark V Coupe*, 643 F.2d 154, 158 (3d Cir.), *cert. denied*, 454 U.S. 818, 102 S.Ct. 97, 70 L.Ed.2d 88 (1981); *United States v. One 1975 Pontiac LeMans*, 621 F.2d 444, 450 (1st Cir.1980).

12. *United States v. Troiano*, 365 F.2d 416, 418–19 (3d Cir.), *cert. denied*, 385 U.S. 958, 87 S.Ct. 396, 17 L.Ed.2d 303 (1966).

**1186**

cumstances.[13]

The *Bush* court also pointed out the doctrinal development in fourth amendment analysis which recognizes the distinction between searches and seizures,[14] concluding:

> [N]otwithstanding the apparent identity of the standard for search with that for seizure, it is now clear that the test of reasonableness for a search is, in at least certain situations, more stringent than the test of reasonableness for a seizure, for a seizure may be made without a warrant in circumstances where a search could not lawfully be made without one.[15]

I am of the view that the *Bush* court and the others that have refused to read an exigent circumstances requirement into the statute have the best of the argument and that it has equal application in the interpretation of the Utah statute.

I would affirm the forfeiture.

HOWE, Associate C.J., concurs in the dissenting opinion of HALL, C.J.

---

13. *See United States v. One 1975 Pontiac Le-Mans,* 621 F.2d at 450; *United States v. Milham,* 590 F.2d 717, 720 (8th Cir.1979); *United States v. LaVecchia,* 513 F.2d 1210, 1215–16 (2d Cir. 1975); *United States v. White,* 488 F.2d 563, 564–65 (6th Cir.1973); *United States v. Stout,* 434 F.2d 1264, 1267 (10th Cir.1970); *see also Founding Church of Scientology v. United States,* 409 F.2d 1146, 1150 (D.C.Cir.), *cert. denied,* 396 U.S. 963, 90 S.Ct. 434, 24 L.Ed.2d 427 (1969). *But see United States v. Pruett,* 551 F.2d 1365, 1369–70 (5th Cir.1977); *United States v. McCormick,* 502 F.2d 281, 287 (9th Cir.1974).

14. In *Bush,* the court observed:

In *Calero–Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974), the Court held that due process does not require notice and a hearing before government agents seize property pursuant to a forfeiture statute. *See generally,* Kandaras, *Due Process and Federal Property Forfeiture Statutes: The Need for Immediate Post–Seizure Hearing,* 34 Sw.L.J. 925 (1980). The *Calero–Toledo* Court refused to address the "question whether the Fourth Amendment warrant or probable cause requirements are applicable to [forfeiture] seizures." 416 U.S. at 679–80, n. 14, 94 S.Ct. at 2089–90 n. 14. *Bush,* 647 F.2d at 368–69 n. 15; *see also Walter v. United States,* 447 U.S. 649, 654, 100 S.Ct. 2395, 2400, 65 L.Ed.2d 410 (1980) (opinion of Stevens, J.) (it is "settled that an officer's authority to possess a package is distinct from his authority to examine its contents"); *Arkansas v. Sanders,* 442 U.S. 753, 763–64, 99 S.Ct. 2586, 2592–93, 61 L.Ed.2d 235 (1970).

15. *Bush,* 647 F.2d at 369 (footnote omitted).