942 P.2d 343 (1997)
STATE of Utah, Plaintiff and Appellee,
v.
ONE HUNDRED SEVENTY-FIVE THOUSAND EIGHT HUNDRED DOLLARS, UNITED STATES CURRENCY, and one Scale, Defendant.
Darold Hinsch, Appellant.
No. 960046.
Supreme Court of Utah.
July 18, 1997.
*345 E. Neal Gunnarson, Clark A. Harms, Salt Lake City, for appellee.
G. Fred Metos, Salt Lake City, for appellant.
RUSSON, Justice:
The State filed a complaint for forfeiture of proceeds received from the sale of illegal drugs after convicting claimant Darold Hinsch of possession of a controlled substance. Hinsch filed a claim for this money, which he had previously turned over to government agents. He argued that seizure of the money was improper and that forfeiture, coupled with his conviction, violated his constitutional protection against double jeopardy. The trial court ruled against him on both counts. It is from this ruling that Hinsch appeals. We affirm the trial court's decision.

BACKGROUND
Agents from the Metro Narcotic Strike Force executed a search warrant on Darold Hinsch authorizing the agents to search his person, residence, business, and truck for narcotics. The agents searched Hinsch's premises and found illicit drugs which served as the basis for his subsequent conviction. Hinsch was not present during the search, although his wife and two friends were. No arrests were made at that time.
Subsequently, agents located and arrested Hinsch. During an interview after he had been given his Miranda[1] warning, Hinsch expressed concern that his wife and friends not be arrested. On his own initiative, he offered to cooperate with the investigation in exchange for possible leniency toward the others. Detective Scharman informed him that though his wife and associates were still under investigation, he would discuss Hinsch's cooperation with the county attorney when determining whether they would be charged with crimes. Hinsch was told, however, that Scharman needed Hinsch's full cooperation in this regard.
Hinsch directed the officers to various sums of money received as payment for narcotics. He led them to a storage unit where most of the money at issue was hidden. He also directed them to another cache hidden in some shrubbery at a shopping center. Still later, Hinsch notified the agents of a drug payment that was to be wired to him. In total, Hinsch voluntarily turned over $175,800, which he admitted were proceeds from the sale of illegal drugs.
Hinsch was charged with possession of a controlled substance with intent to distribute and subsequently pled guilty to and was convicted of the reduced charge of unlawful possession of a controlled substance. He was sentenced on November 8, 1993, to thirty-six months' probation, including twelve months in jail. Subsequent to his conviction, the State filed an in rem civil complaint against *346 the money proceeds that Hinsch admitted he had received from the sale of drugs. The State sought forfeiture of the same. The trial held in June of 1995 resulted in a judgment of forfeiture.
On appeal, Hinsch argues that the trial court did not have jurisdiction over the money in question. This is so, he claims, because the money was seized without a warrant, and none of the statutory exceptions to the warrant requirement applied. Hinsch further argues that any consent he gave to the seizure of the property was given involuntarily. He also claims that the State was required to show that in consenting to seizure of the property, he knew of his constitutional rights and knowingly waived them, which the State failed to do. Finally, Hinsch contends that inasmuch as he had already been convicted of illegal possession of drugs, forfeiture of the drug proceeds amounts to a second punishment prohibited by the double jeopardy clauses of both the state and federal constitutions.
The State responds that the trial court had proper in rem jurisdiction and that seizure of the drug proceeds was proper inasmuch as Hinsch voluntarily consented to it. The State also contends that because this was a civil forfeiture action brought against the property, it does not amount to punishment and does not, therefore, subject Hinsch to double jeopardy.
The two major issues before this court on appeal are (1) whether seizure of the drug proceeds was proper and (2) if so, whether forfeiture of the seized drug proceeds was punishment under double jeopardy analysis.

STANDARD OF REVIEW
Whether consent is an exception to a warrantless seizure is a question of law to be reviewed for correctness. State v. Thurman, 846 P.2d 1256, 1271 (Utah 1993). The trial court's ultimate conclusion that consent was or was not voluntary is reviewed for correctness. Id. The underlying facts of the alleged consent, however, are reviewed under a clearly erroneous standard. Id. In regard to consent to search, the trial court is granted only limited discretion in its application of the legal standard of consent to the facts. See State v. Pena, 869 P.2d 932, 938 (Utah 1994) (citing policy concerns raised in Thurman, 846 P.2d at 1269-71, as reason for narrowing trial court's discretion). Likewise, regarding consent to seizure, the trial court is granted only limited discretion. Also, constitutional questions, such as whether forfeiture is punitive and therefore barred in this case by the constitutional protections against double jeopardy, are questions of law and therefore reviewed for correctness. Ryan v. Gold Cross Servs., Inc., 903 P.2d 423, 424 (Utah 1995).

ANALYSIS

I. WAS THE SEIZURE PROPER?

A. Consent as an Exception
While consent is a well-recognized exception to the warrant requirement for searches, Hinsch argues that consent to seizure is not. He argues that the agents' seizure of the drug proceeds violated his constitutional rights inasmuch as it was done without a warrant and that none of the exceptions set forth in the statute under which the property was seized applied. The statute establishes certain exceptions when property may be seized without a warrant, but consent is not one of them.[2]
However, the State argues that consent is a common law exception and need not rely on statutory authority. The State argues that we should recognize consent as an exception to warrantless seizures as we do with respect to warrantless searches. It also points out *347 that consent is a recognized exception to warrantless seizures in both federal search and seizure law. It further argues that because consent is explicitly made an exception in a related statute that addresses administrative searches and seizures, Utah Code Ann. § 58-37-10, it should also be recognized as an exception here. In support thereof, the State cites Davis v. State, 813 P.2d 1178 (Utah 1991), a case that involved the forfeiture of a van that was used for personal possession and consumption of a controlled substance. In a footnote to that case, this court compared this statute with a statute addressing administrative search and seizure, Utah Code Ann. § 58-37-10, which explicitly included exigent circumstances as an exception to the warrant requirement and held that the exception should also apply to forfeitures sought pursuant to this forfeiture statute although this statute does not explicitly include such an exception. 813 P.2d at 1182 n. 2. The State urges the same construction here, explaining that the policy and protections surrounding an administrative seizure made pursuant to section 58-37-10 should apply equally to those made pursuant to a forfeiture proceeding.
Our state constitutional guarantee against unreasonable seizures originates from the same clause as does the guarantee against unreasonable searches. Article I, section 14 reads as follows:
The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue but upon probable cause supported by oath or affirmation, particularly describing the place to be searched, and the person or thing to be seized.
Because the language giving rise to these rights is one and the same, it logically follows that the protection offered thereby would also be similar. Searches and seizures were addressed in the same clause because they are closely related. In practical terms, the protections should be similar because the general right to the private enjoyment of property is at stake in both searches and seizures. Because seizures are usually precipitated by searches, uniformity between searches and seizures with respect to a warrant requirement and its exceptions is logical.
In regard to searches under Utah constitutional law, consent is a well-recognized exception to the warrant requirement. State v. Whittenback, 621 P.2d 103, 106 (Utah 1980); see also State v. Durand, 569 P.2d 1107, 1108 (Utah 1977); State v. Kelsey, 532 P.2d 1001, 1004 (Utah 1975). However, whether consent is also an exception to seizure of property without a warrant has never been addressed by this court.
Federal law recognizes a consent exception in both search and seizure analysis. Interpreting a similar federal forfeiture statute,[3] the Second Circuit held that a warrantless seizure is valid if it meets "one of the recognized exceptions to the fourth amendment's warrant requirement." United States v. Lasanta, 978 F.2d 1300, 1305 (2d Cir.1992) (citing Coolidge v. New Hampshire, 403 U.S. 443, 454-55, 91 S.Ct. 2022, 2031-32, 29 L.Ed.2d 564 (1971)); United States v. Daccarett, 6 F.3d 37, 49 (2d Cir.1993); United States v. Dixon, 1 F.3d 1080, 1083 (10th Cir.1993). Consent is a well-recognized exception to the warrant requirement for searches in federal law. Katz v. United States, 389 U.S. 347, 357-58, 88 S.Ct. 507, 514-15, 19 L.Ed.2d 576 (1967); Schneckloth v. Bustamonte, 412 U.S. 218, 219, 93 S.Ct. 2041, 2043, 36 L.Ed.2d 854 (1973); Zap v. United States, 328 U.S. 624, 628, 66 S.Ct. 1277, 1279, 90 L.Ed. 1477 (1946). The State argues that this court should interpret Utah's forfeiture statute similarly.
Inasmuch as the right against unlawful searches and the right against unlawful seizures are coupled within the same constitutional provision, it is only logical that if a person could expressly consent to one, he or she should be able to consent to the other. Whereas we have previously held that consent is an exception to the warrant requirement in the case of searches, Whittenback, 621 P.2d at 106, we now hold that consent is *348 likewise an exception in the case of seizures. In other words, a warrantless seizure of property is valid if done pursuant to and within the scope of voluntary consent.
Hinsch argues, however, that even if consent to seizure of property is recognized as an exception to the warrant requirement, his consent was involuntary and therefore invalid. He contends that the existence of an understanding that he could prevent his wife and friends from being arrested through his cooperation coerced him into consenting.
However, the trial court concluded that Hinsch's consent was voluntary. The trial court found that Hinsch, himself, initiated and pursued this "understanding." He said he would be willing to cooperate if it would help his friends avoid criminal charges. Although the agent informed Hinsch that he would discuss his cooperation with the county attorney, no explicit promises or threats were made. It can hardly be said that the "understanding" was coercively employed when it was reached, in fact, at Hinsch's suggestion. He offered his consent to the seizure of the money. The trial court also found that he wanted to "get drug dealing behind him." He not only voluntarily led officers to where the money was stashed but later, outside of custody, volunteered information about forthcoming drug payments. In short, the trial court did not err in determining that Hinsch's consent was voluntarily given.

B. Knowing Consent
Hinsch urges that even if we adopt consent as an exception to the warrant requirement for seizures, we should also require the State to show that consent was knowingly given, that is, that he had full knowledge of his right to refuse consent. He argues that consent amounts to a waiver of a constitutional protection and therefore must be knowingly waived because there is a presumption against the waiver of constitutional rights. Barnard v. Wassermann, 855 P.2d 243, 247 (Utah 1993); State v. Meinhart, 617 P.2d 355, 357 (Utah 1980).
With respect to searches under Utah law, while we have recognized that consent must be voluntary, "the prosecution is not required to prove that defendant knew of his right to refuse consent in order to show voluntariness." Whittenback, 621 P.2d at 106. We find no reason to apply a different rule to seizures from that of searches. Knowing consent is merely a relevant factor in considering whether consent is voluntary and applies to seizures just as it applies to searches. Id. Federal law is similar in this respect. In Schneckloth, after discussing supporting precedents, the United States Supreme Court state that "knowledge of a right to refuse is not a prerequisite of a voluntary consent." 412 U.S. at 234, 93 S.Ct. at 2051; accord United States v. Garcia, 56 F.3d 418, 423-24 (2d Cir.1995); United States v. Kikumura, 918 F.2d 1084, 1093 (3d Cir.1990).[4]
The very nature of consent obviates the necessity of a knowing requirement. One would not offer consent unless one knew that his or her consent was needed. The case at bar illustrates this point. Hinsch offered his cooperation in exchange for possible leniency from the officers. His actions indicate that he knew his consent was valuable to the officers and, more importantly, that he knew he had the option not to consent.
We refuse to place a knowing requirement on the consent exception in the case of seizures as we refused to do in Whittenback with respect to searches and as the federal courts refused to do in Schneckloth and other cases cited above. In sum, consent is an exception to the warrant requirement with respect to seizures as it is with respect to searches. We affirm the lower court's holding that the seizure was proper because of Hinsch's voluntary consent.

II. DOUBLE JEOPARDY
We now turn to Hinsch's double jeopardy claim. Hinsch argues that because he has already been convicted of illegal possession *349 of drugs, the subsequent forfeiture action against the proceeds from the sale of drugs constituted additional punishment and was therefore barred by the double jeopardy clause of the federal constitution. The double jeopardy clause protects against multiple punishments for the same crime as well as multiple prosecutions. Schiro v. Farley, 510 U.S. 222, 229, 114 S.Ct. 783, 788, 127 L.Ed.2d 47 (1994).
The State argues that the forfeiture action was not brought against Hinsch personally but against the drug proceeds pursuant to the Utah forfeiture statute, Utah Code Ann. § 58-37-13, and that the statute is not punitive but is an in rem civil procedure in construction and effect. Therefore, the double jeopardy protections are not implicated. In this regard, the State cites United States v. Ursery, ___ U.S. ___, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996), which held that in rem civil forfeitures of property are neither criminal in nature nor punitive for purposes of the double jeopardy clause of the United States Constitution. Id. at ___, 116 S.Ct. at 2149. It acknowledged, however, that such civil status could be lost if the forfeiture proceedings were so punitive as to constitute punishment. Id. at ___, 116 S.Ct. at 2147. Ursery consolidated two cases  one involving forfeiture proceedings against a house that had allegedly been used in drug trafficking and the other involving various drug-related property, including proceeds from an exchange of illegal drugs. The court held that forfeiture of the proceeds from the illegal drug exchange as well as drug-related property did not constitute punishment and therefore did not constitute double jeopardy. Id. at ___, 116 S.Ct. at 2149. The court found that there was very little evidence that the forfeiture proceedings were so punitive as to render them criminal. Id. at ___, 116 S.Ct. at 2148. In regard to the proceeds from the illegal drug transaction, Justice Stevens, in a concurring and dissenting opinion, stated:
Those funds are the proceeds of unlawful activity. They are not property that respondents have any right to retain. The forfeiture of such proceeds, like the confiscation of money stolen from a bank, does not punish respondents because it exacts no price in liberty or lawfully derived property from them. I agree that the forfeiture of such proceeds is not punitive and therefore I concur in the court's disposition....
Id. at ___, 116 S.Ct. at 2152.
Other federal cases have similarly held that forfeiture of drug proceeds is not punishment for double jeopardy purposes. Caplin & Drysdale v. United States, 491 U.S. 617, 627-30, 109 S.Ct. 2646, 2653-55, 105 L.Ed.2d 528 (1989) held that there can be no property rights in drug proceeds. Valona v. United States, 919 F.Supp. 1260, 1271 (E.D.Wis.1996) stated, "It is clear to this court that forfeiture of drug proceeds used to purchase drugs is not punishment." In United States v. Salinas, 65 F.3d 551, 555 (6th Cir.1995), the court held that because "one never acquires a property right to proceeds,... forfeiture of drug proceeds is not punishment, but is remedial in nature." The Fifth Circuit explained the logic of such a holding: "The possessor of proceeds from illegal drug sales never invested honest labor.... Consequently, he has no reasonable expectation that the law will protect, condone, or even allow, his continued possession of such proceeds because they have their very genesis in illegal activity." United States v. Tilley, 18 F.3d 295, 300 (5th Cir. 1994). Some courts have compared a defendant's right in drug proceeds to those in money stolen in a bank robbery. Caplin & Drysdale, 491 U.S. at 626, 109 S.Ct. at 2652; Smith v. United States, 76 F.3d 879, 882 (7th Cir.1996); Tilley, 18 F.3d at 300.
Clearly, one does not have, nor is one entitled to, a property interest in illegal drugs that have been confiscated by the police. Davis, 813 P.2d at 1184. Such constitutes contraband per se. Id. It is equally clear that one who normally has a right to property loses that right where that property is sufficiently involved in illegal drug activities. One 1958 Plymouth Sedan v. Pennsylvania, 380 U.S. 693, 699-700, 85 S.Ct. 1246, 1250-51, 14 L.Ed.2d 170 (1965). Such constitutes derivative contraband. Id.
Indeed, the Utah forfeiture statute in question explicitly denies any property rights *350 in drug proceeds. Utah Code Ann. § 58-37-13(1)[5] reads as follows:
The following are subject to forfeiture and no property right exists in them:
...;
(g) everything of value furnished or intended to be furnished in exchange for a controlled substance in violation of this chapter, all proceeds traceable to any violation of this chapter, and all moneys,... used or intended to be used to facilitate any violation of this chapter.
(Emphasis added.) Therefore, where money, which is normally legal to possess, is clearly a product of a drug transaction, it is subject to seizure, and forfeiture cannot be considered punishment. Taking away that to which one has no right is not punishment.
In the case before us, the connection between the $175,800 in question and the illegal drug activity is clear. Hinsch, himself, led the authorities to the currency and readily admitted that it was received for the illegal sale of drugs. Hinsch had no right or claim to these proceeds. The amount forfeited never rightfully belonged to Hinsch because he received it in return for illegal drugs. As such, its forfeiture does not constitute punishment and does not implicate the double jeopardy clause in this case.
The trial court's decision is affirmed.
ZIMMERMAN, C.J., and HOWE and DURHAM, JJ., concur.
STEWART, Associate C.J., concurs in the result.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[2] The relevant portion of the Utah Controlled Substance Act provides that seizure without a warrant may be made when

(a) the seizure is incident to an arrest or search under a search warrant or an inspection under an administrative inspection warrant;
(b) the property subject to seizure has been the subject of a prior judgment in favor of the state in a criminal injunction or forfeiture proceeding under this chapter;
(c) the peace officer has probable cause to believe that the property is directly or indirectly dangerous to health or safety; or
(d) the peace officer has probable cause to believe that the property has been used or intended to be used in violation of this chapter.
Utah Code Ann. § 58-37-13(2)(1993).
[3] 21 U.S.C. § 881(b) (1986). Like the statute at issue here, section 881 does not explicitly list consent as an exception to the warrant requirement.
[4] To the extent that a knowing consent is relevant to a finding of voluntary consent, we find that because consent was given after Hinsch had received his Miranda warning, the knowing element of voluntary consent is sufficiently met.
[5] This subsection is renumbered in the 1996 supplement as Utah Code Ann. § 58-37-13(2). Although this statute denies property rights in items that may have a much less significant relationship with the illegal activity, this statute is not offensive in this case because the property in question is so closely associated with the illegal drug activity.